UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Forest City Residential Management, Inc.,
on behalf of Plymouth Square Ltd. Dividend
Housing Association and Monroe Township
Assoc. Ltd. Dividend Housing Association,

      Plaintiff,

v.                                 Case No. 13-14547

Lashawn Beasley and Eugene Kenyon,        Honorable Sean F. Cox

      Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. #30)
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (Doc. #19)**

This is a declaratory judgment action. Plaintiff Forest City Residential Management, Inc. ("Plaintiff" or "Forest City") filed a Complaint for Declaratory Judgment on October 31, 2013, seeking to have this Court declare that, among other things, Defendants Lashawn Beasley ("Beasley") and Eugene Kenyon ("Kenyon") are not entitled to a reasonable accommodation under the Fair Housing Act and/or Rehabilitation Act to use medical marijuana in their rental units at Plaintiff's Section 8 federally assisted housing facilities. (Doc. #1; Doc. #16).

This matter is before the Court on Defendant Beasley's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) (Doc. #30) and Plaintiff's Motion for Summary Judgment (Doc. #19). The motions have been fully briefed by the parties and the Court heard oral argument on November 13, 2014. For the reasons set forth below, the Court shall DENY Defendant Beasley's Motion to Dismiss and GRANT IN PART and DENY IN PART Plaintiff's Motion for

1

Summary Judgment.

## BACKGROUND

### A.    Procedural Background

Forest City filed this action against Defendants Beasley and Kenyon on October 31, 2013. Beasley, who is represented by counsel, filed an Answer to the Complaint on January 16, 2014. (Doc. #13).  Forest City filed a First Amended Complaint for Declaratory Judgment and Injunctive Relief on February 4, 2014.  (Doc. #16).

Defendant Kenyon has not answered or appeared in this action. On December 11, 2013, Forest City obtained a Clerk's Entry of Default as to Kenyon.  Forest City has not yet sought entry of a default judgment as to Kenyon.

On May 29, 2014, this Court issued another Order requiring Forest City to show cause why Kenyon should not be dismissed for failure to prosecute.  (Doc. #26).  The response was due by June 12, 2014, and no response was filed.  A footnote in Forest City's Motion for Summary Judgment makes clear, however, that this lawsuit is now moot as to Kenyon because he has since vacated the apartment he occupied following eviction proceedings for assaultive behavior.  (Pl. Mo. at 2, fn 1).

Forest City manages several apartment complexes for their owners, including complexes that participate with federally-subsidized housing programs.  Beasley, a resident of an apartment managed by Forest City, holds a medical marijuana card and has been smoking marijuana in her apartment. She has requested, as a reasonable accommodation under the Fair Housing Act, that she be allowed to use marijuana in her apartment.  In this action, Forest City seeks the following relief:

> WHEREFORE, Plaintiff prays that this Honorable Court enter a declaratory judgment that:
>
> A)      Defendants may not seek protection from eviction under the Michigan

2

Medical Marijuana Act for the use, sale, manufacture, possession or distribution of marijuana on premises owned or controlled by Plaintiff as long as Plaintiff elects to enforce federal law preemption and such law remains enforceable by Act of Congress;

B)      The federal Controlled Substances Act preempts the Michigan Medical Marijuana Act;

C)      That the use, possession, manufacture, sale or distribution of marijuana in violation of the Controlled Substances Act is cause for Plaintiff to evict the tenants in violation thereof and such conduct is not exempted by the Michigan Medical Marijuana Act;

D)      The request to use marijuana as an accommodation under the Fair Housing Act is not reasonable or cognizable;

E)      Appropriate injunctive relief as prayed for in this Amended Complaint;

F)      Plaintiff further prays for such other relief as is just and equitable following entry of Declaratory Judgment in its favor.

(First Am. Compl. at 10-11). On February 4, 2014, the parties stipulated to withdrawing the jury demand in this action. (Doc. #17).

On March 24, 2014, Forest City filed the instant Motion for Summary Judgment. (Doc. #19). That motion was fully briefed by the parties and oral arguments were scheduled to be heard on October 9, 2014. However, on October 6, 2014, Defendant filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), challenging Plaintiff's standing to maintain this suit, arguing that the Court should decline to intervene in what she characterizes as a landlord-tenant issue, and arguing that Plaintiff has failed to state a claim upon which relief may be granted. The motion cut-off date in this case was March 24, 2014. Nonetheless, because standing is an issue touching upon subject matter jurisdiction and can be raised at any time, the Court found it appropriate to consider Defendant's motion on the merits.

**B.      Factual Background**

3

The underlying facts of this case are largely undisputed.

Beasley was diagnosed with Multiple Sclerosis in April of 2009. (Beasley Affidavit, attached as Ex. D to Pl.'s Br.). Her income is Supplemental Security Income ("SSI") based on her disability of Multiple Sclerosis. (Pl. Br. at Ex. D).

Beasley's physician prescribed medicinal marijuana to help with her symptoms of Multiple Sclerosis. (Pl. Br. at Ex. D). Beasley obtained a Medical Marijuana card issued by the State of Michigan pursuant to the Michigan Medical Marihuana Act. (Pl. Br. at Ex. D; *see also* Ex. 3 to Pl.'s Br.).

Forest City is a management company that manages apartment complexes. Beasley entered into a Lease Agreement with Forest City on February 6, 2013 to occupy a townhome apartment at Plymouth Square Village in the City of Detroit. (Pl. Stmt. of Undisputed Facts at ¶ 1; Def.'s Response to Same at ¶ 1; *see also* Lease Agreement, attached as Ex. A to Pl.'s motion).

Plymouth Square is a project-based, Section 8, federally assisted housing complex. Plymouth Square receives a portion of Beasley's monthly rent in the form of a subsidy from the United States Department of Housing and Urban Development ("HUD") via the Michigan State Housing and Development Authority. (Lake Affidavit, attached as Ex. C to Pl. Br.; Lease Agreement, Ex. A to Pl. Br., at ¶ 3).

The Lease Agreement and Lease Addendum are regulated by HUD. (Pl. Br. at 1). The Lease Agreement provides that the landlord, Forest City, "may" terminate the agreement for various reasons, including:

    (4)    Drug-related criminal activity engaged in on or near the premises by any Resident, household member, or guest, or any such activity engaged in on the premises by any other person under the Resident's control;

. . . .

    (9)     If the landlord determines that the Resident, any member of the Resident's household, a guest or another person under the Resident's control has engaged in the criminal activity, regardless of whether the Resident, any member of the Resident's household, a guest or another person under the Resident's control has been arrested or convicted for such activity.

(Pl. Br., Ex. A at ¶ 23).  The Lease further states that

[f]or tenancy terminations involving criminal activity, including drug-related criminal activity, below are regulatory definitions in 24 Code of Federal Regulations Part 5, Subpart I:

**Drug** means a controlled substances [sic] as defined in section 102 of the Controlled Substances Act (21 U.S.C. Section 802).

**Drug-related criminal activity** means the illegal manufacture, sale, distribution, or use of a drug, or the possession of a drug with intent to manufacture, sell, distribute or use the drug (including commercial drug crimes).

(Pl. Br., Ex. A at ¶ 23) (bolding in original).

On the same day that Beasley executed her lease, she also signed a "Tenancy Termination Addendum For HUD Housing Programs," which stated that the landlord "may" terminate the lease agreement for various reasons, including the following reasons that Beasley acknowledged by placing her initials next to them:

    4.    *Drug-related criminal activity engaged in or near the premises by any tenant*, household member, or guest, or any such activity engaged in on the premises by any other person under the tenant's control, pursuant to 24 CFR Section 5.858; or

    5.    *A household member is illegally using a drug* or it is determined that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents, pursuant to 24 CFR Section 5.858

(Pl. Br. at Ex. E) (emphasis added).

In July of 2013, Forest City filed a Complaint in the 36th District Court, Wayne County,

5

Michigan, seeking to terminate Beasley's tenancy. In responding to the Complaint, Beasley stated that she has Multiple Sclerosis, and that her physician had prescribed medical marijuana to help with her symptoms. Beasley requested, in connection with that proceeding, that Forest City grant her a reasonable accommodation under the Fair Housing Act and allow her to use medical marijuana in her own rental unit. (Pl.'s Br. at Ex. D).

Thereafter, Forest City dismissed the state court action and filed this declaratory action in this court. Plaintiff Forest City now seeks Summary Judgment in its favor (Doc. #19). Defendant Beasley has filed a response in opposition to Plaintiff's motion (Doc. #22), and Plaintiff has replied. (Doc. #25).

Defendant has also moved for dismissal of this action on the following bases: 1) that Plaintiff lacks standing because it has suffered no injury in fact; 2) that this Court should decline to exercise jurisdiction to avoid involvement in a state-law landlord-tenant dispute; and 3) Plaintiff has failed to state a claim upon which relief may be granted. (Doc. #30). Plaintiff filed a response to Defendant's motion (Doc. #35) and Defendant has replied. (Doc. #36).

## STANDARD OF DECISION

### A.    Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984) (quoting FED. R. CIV. P. 56(c)). "The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). Moreover, the

6

court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court may consider: 1) documents referenced in, or attached to, the complaint and central to the plaintiff's claims; 2) matters of which a court may properly take notice; and 3) public documents and records. *Costell v. Bank of New York Mellon,* 2013 WL 317746 (E.D. Mich. 2013); *Meyer v. Citimortgage, Inc.*, 2012 WL 411995 (E.D. Mich. 2012); *Devlin v. Kalm*, _Fed. App'x _, 2013 WL 4265757 (6th Cir. 2013).

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

7

**C.**    **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

Defendant has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion pursuant to 12(b)(1) alleges that the court does not have subject matter jurisdiction over the claims as presented.  FED. R. CIV. P. 12(b)(1).  A motion that alleges lack of standing is properly characterized as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing—lack of subject matter jurisdiction—under Fed. R. Civ. P. 12(b)(1).").

12(b)(1) motions "fall into two categories: facial attacks and factual attacks."  *Rehab Management Solutions, LLC v. Diversa Care Therapeutics, Inc.*, 2011 WL 4088300 at *3 (E.D. Mich. Sept. 14, 2011)(unpublished), citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  "Facial attacks challenge the sufficiency of the pleading itself . . . ."  *Id.*  "Factual attacks, in contrast, challenge 'the factual existence of subject matter jurisdiction . . . the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Id.*  The Rule 12(b)(1) factual attack analysis does not require a presumption of truth with respect to the facts alleged in the complaint.  *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The plaintiff has the burden of proving jurisdiction to survive the motion.  *Id.* at *3.

## ANALYSIS

**I.**    **Should This Court Grant Defendant's Motion to Dismiss?**

**A.**    **Standing**

As a threshold requirement for a federal court's exercise of its jurisdiction, there must be a "case" or "controversy" to be adjudicated.  U.S. Const. Art. III § 2 cl. 1.  "Article III standing . . .

8

enforces the Constitution's case-or-controversy requirement." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007), quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Whether a plaintiff has constitutional standing to bring a particular cause of action is a threshold question in every federal case that can be raised at any time during the proceeding. *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007).[1]

The United States Supreme Court has established that, to satisfy this "irreducible constitutional minimum of standing," the plaintiff must have suffered 1) an injury in fact, 2) that is fairly traceable to defendant's conduct, and 3) the injury is "likely to be redressed by a favorable judicial decision." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014), quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). Plaintiff bears the burden to establish standing. *Id.* at 561. If Plaintiff cannot establish constitutional standing, the case must be dismissed for lack of subject matter jurisdiction. *Loren*, 505 F.3d at 607, citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 198 (2nd Cir. 2005).

Defendant primarily argues that Plaintiff lacks standing to bring this action because "Plaintiff's amended complaint is devoid of any facts to establish that it has or even will suffer injury." (Def. Mo. at 11). Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) therefore lodges a facial attack to the sufficiency of the Complaint, and the Court

---

[1] For this reason, Plaintiff's "objection" to Defendant's motion due to the fact that it was filed after the motion cut-off date (*see* Doc. #31) is overruled.

shall presume the truth of all allegations contained in the complaint. *See Ritchie*, 15 F.3d at 598.

Defendant also claims that Plaintiff has not alleged that it has been harmed in the past, nor that it will be harmed in the future. Because Plaintiff has not suffered an injury in fact, Defendant argues, Plaintiff cannot show that the injury is either traceable to Defendant's conduct or redressable by a favorable judicial decision.

The Court disagrees. Plaintiff alleges in its Amended Complaint that "the pervasive and deleterious use of controlled substances in multi-family housing has adversely impacted the quality of life of such housing and the health and safety of residents." (Amd. Compl. at ¶ 39). Additionally, at the hearing on this motion, Plaintiff pointed out that requiring it to allow Defendant to use marijuana in or on its property would result in its inability to enforce its drug-free policy, which would in turn result in a fundamental alteration of its main objectives as a federal housing project. The Court is satisfied that these allegations constitute an injury in fact sufficient to meet the standing requirement.

The Court also finds that the other two standing requirements are met, i.e. causation and redressability. Plaintiff's stated injuries stem, at least in part, from Defendant's use of marijuana on Plaintiff's premises. Additionally, Plaintiff's requested declaration that marijuana use is not a reasonable accommodation under the FHA would redress Plaintiff's injury because it will likely be able to secure a final judgment of eviction against Defendant in state court, should Plaintiff choose to pursue such action. Thus, the Court finds that Plaintiff's injury is causally related to Defendant's conduct and redressable by favorable court action.

Based on the foregoing, the Court finds that Plaintiff has established standing to prosecute this action.

### B.     Discretionary Exercise Of Jurisdiction Under Declaratory Judgment Act

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ."  28 U.S.C. § 2201(a).

The Declaratory Judgment Act does not confer jurisdiction on this Court to adjudicate disputes.  *Michigan Sav. and Loan League v. Francis*, 683 F.2d 957, 960 (6th Cir. 1982).  Rather, the Declaratory Judgment Act is "discretionary ancillary relief."  *Id.*, citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667 (1950).  Thus, before a federal court can reach the merits of an action that seeks relief pursuant to the Declaratory Judgment Act, the plaintiff must assert a valid basis for subject matter jurisdiction, *id.*, and there must be a case or controversy.  *Brennan v. Rhodes*, 423 F.2d 706, 706-07 (6th Cir. 1970).  The federal question must be "disclosed upon the face of the complaint, unaided by the answer."  *Mich. Sav.*, 683 F.2d at 961, quoting *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974).

Here, Plaintiff alleges that federal question jurisdiction exists under 28 U.S.C. § 1331 because Defendant has requested a reasonable accommodation to use medical marijuana under the FHA.  Plaintiff requests a declaration that medical marijuana use is not a reasonable accommodation under the FHA.  The Court finds that this is a controversy arising under federal law and that federal question jurisdiction exists.

The Court can decline to exercise its jurisdiction in a Declaratory Judgment Act case, however.  *National Emblem Ins. Co. v. Washington*, 482 F.2d 1346, 1347 (6th Cir. 1973) ("The Declaratory Judgment Act does not confer any absolute rights on plaintiffs. It merely is an enabling

statute conferring discretionary jurisdiction on the federal courts."). Declaratory judgments are appropriate when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk Western R. Co. v. Cons. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

The parties agree that, in determining whether it should exercise jurisdiction over a declaratory judgment action, the Court should consider the following factors: 1) whether the judgment would settle the controversy; 2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to provide an arena for "res judicata;" 4) whether the use of the declaratory action would constitute a federal encroachment on state jurisdiction; and 5) whether there is an alternate remedy that is better or more effective. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000), citing *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991); *Grand Trunk*, 746 F.2d at 326.

Defendant argues that the Court should exercise its discretion to decline jurisdiction because the judgment would not settle the controversy, as "Plaintiff would still be required to file a state court eviction action to fully adjudicate the matter." (Def. Mo. at 13).

The Court will not decline to exercise its jurisdiction in this case because the Court finds that its decision will serve to clarify the legal relations and issues between the parties. As Defendant's main defense to the eviction action appears to be her reasonable accommodation request, this Court's order on the reasonable accommodation issue will pave the way for expedient resolution of the parties' landlord-tenant dispute.

12

Defendant also argues that Plaintiff "seeks to obtain procedural fencing for a future landlord tenant action" by obtaining a judgment in this Court which would "prevent a further adjudication of whether the use of medical marijuana under a state law constitutes a violation of a lease to terminate a tenancy."

The Court finds that Defendant's argument is without merit. Defendant has not shown that Plaintiff is *merely* using this case to obtain favorable precedent for future landlord-tenant disputes. All final court orders have some preclusive effect between the parties, and may also have preclusive effect in cases involving future parties. That cannot be a reason for which to decline jurisdiction. Rather, the Court should hesitate to issue a declaratory judgment where a plaintiff seeks its issuance as *merely* as a procedural sword for future actions. That does not appear to be the case here, where there is an actual controversy as to the rights and duties of the parties under HUD, the FHA, and the MMMA.

Based on the foregoing, the Court rejects Defendant's arguments and will exercise its jurisdiction in this declaratory judgment action.

### C.      Failure to State a Claim

Defendant argues, quite perfunctorily, that Plaintiff has failed to state a claim upon which relief may be granted because "the complaint fails to set forth any facts supporting any arguable constitutional challenges, violation of a statute, or regulation."

As discussed above, the Court finds that Plaintiff has stated a claim for declaratory relief based on federal question jurisdiction. Therefore, the Court shall DENY Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

### II.      Should This Court Grant Plaintiff's Motion for Summary Judgment?

13

According to Forest City's First Amended Complaint, it seeks a declaration from this Court that:

1)      The federal Controlled Substances Act preempts the Michigan Medical Marihuana Act;

2)      Beasley may not seek protection from eviction under the Michigan Medical Marihuana Act for the use, sale, manufacture, possession or distribution of marijuana on premises owned or controlled by Plaintiff as long as Plaintiff elects to enforce federal law preemption;

3)      That the use, possession, manufacture, sale or distribution of marijuana in violation of the Controlled Substances Act is cause for Plaintiff to evict the tenants in violation thereof and such conduct is not exempted by the Michigan Medical Marihuana Act; and

4)      Beasley's request to use Marihuana as an accommodation under the Fair Housing Act is not reasonable or cognizable.

(First Am. Compl. at 10-11).  Because Plaintiff prays for relief on several distinct grounds, the Court shall address each issue in turn.

**A.      Does The Federal Controlled Substances Act Preempt The Michigan Medical Marihuana Act?**

Plaintiff requests in its First Amended Complaint that this Court declare that the federal Controlled Substances Act[2] preempts the Michigan Medical Marihuana Act.[3]

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992), quoting U.S. Const. Art. VI, cl. 2.  Federal preemption of state law is determined by first examining "the clear and

---

[2] 21 U.S.C. § 801 *et seq.*

[3] M.C.L. § 333.26421 *et seq.*

14

manifest purpose of Congress." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

There are three types of preemption: express preemption, field preemption, and conflict preemption. Express preemption may apply if Congress explicitly includes a preemption provision in a statutory scheme, thereby stating its intent to displace inconsistent state law. *See Cipollone*, 505 U.S. at 516 ("Congress' intent may be explicitly stated in the statute's language . . . .").

Field preemption applies where "the federal scheme of regulation of a defined field is so pervasive that Congress must have intended to leave no room or the states to supplement it." *Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1039 (S.D.W. Va. 2011) (quoting *City of Charleston, S.C. v. A Fisherman's Best, Inc.*, 310 F.3d 155, 169 (4th Cir. 2002)).

"Conflict preemption applies when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (internal citations and quotations omitted). "In situations where there is a conflict between state and federal law, it is well-established that the state laws are 'without effect.'" *Boland v. Holder*, 2010 WL 3860996 (N.D. Ohio Sept. 30, 2010) aff'd, 682 F.3d 531 (6th Cir. 2012) (quoting *Maryland v. Louisiana*, 451 U.S. 725 (1981)); *see Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141–43 (1963); *Gonzales v. Raich*, 545 U.S. 1, 29 ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

The Controlled Substances Act does not contain an express preemption provision. Furthermore, it is not apparent that Congress intended to foreclose the field of controlled substances

15

regulation from state legislative involvement.  Indeed, state controlled substances legislation is expansive, and varies greatly between jurisdictions.  Thus, if the CSA preempts the MMMA, it is through conflict preemption.

Defendant argues that there is no conflict between federal controlled substances law and Michigan's medical marijuana law because "no section under the MMMA mandates any conduct by Plaintiff that would place it in direct violation of the CSA."  (Def. Resp. at 12).  However, the Court finds that Defendant has construed conflict preemption too narrowly.  The test asks whether, theoretically, one could comply with both the federal and state law without violating either of them. *Fid. Fed. Sav. & Loan*, 458 U.S. at 153.  Here, the answer is unequivocally "no."  That is to say, it is impossible for someone to ingest marijuana, "medical" or otherwise, without violating the CSA. The CSA contains no provision allowing for the "medical" use of marijuana; indeed, as a Schedule I drug, Congress deems marijuana to have no medically acceptable uses.  Thus, the Court finds that the CSA and the MMMA conflict with one another.  Because a state law is "without effect" when it conflicts with federal law, *Maryland*, 451 U.S. at 746, the Court holds that the CSA preempts the MMMA. *See U.S. v. Hicks*, 722 F. Supp. 2d 829, 833 (E.D. Mich. 2010) ("[i]t is undisputable that state medical-marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana.").

**B.     Is Allowing Beasley To Use Medical Marijuana In Her Rental Unit A Reasonable Accommodation Under The FHA Or Section 504 of the Rehabilitation Act?**

**1.     FHA**

Section 3604 of the FHA prohibits discrimination in sale or rental of public housing on the

16

basis of disability.  It provides, in pertinent part:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
>> (f)(1)   To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[4] of—
>>
>> (A)   that buyer or renter,
>> (B)   a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>> (C)   any person associated with that buyer or renter.

42 U.S.C. § 3604.  The FHA further defines discrimination:

> (3)   For purposes of this subsection, discrimination includes—
> (B)   a refusal to make reasonable accommodations in rules, policies, practices, or services , when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .

42 U.S.C. § 3604(f)(3)(B).

An FHA reasonable-accommodation plaintiff must establish that the proposed modification is both reasonable and necessary.  *Hollis v. Chestnut Bend Homeowners Ass'n*, __ F.3d __, 2014 WL 3715088 at *8 (6th Cir. July 19, 2014).  "[T]he crux of a reasonable-accommodation . . . claim typically will be the question of reasonableness."  *Id.* at *9.  An accommodation is reasonable when it imposes "no fundamental alteration in the nature of a program" or "undue financial and administrative burdens."  *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996).  An accommodation is necessary if, "but for the requested accommodation, [the plaintiff]

---

[4] "Handicap" means a physical or mental impairment which substantially limits one or more of such person's major life activities, a record of having such an impairment, or being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in the Controlled Substances Act.).  42 U.S.C. § 3602(h).  It appears undisputed that Defendant Beasley suffers from multiple sclerosis and is handicapped as defined by this subsection.

'likely will be denied an equal opportunity to enjoy the housing of [his or her] choice.'" *Hollis*, 2014 WL 3715088 at *9 (quoting *Smith & Lee Assocs.*, 102 F.3d at 794-95).

In addition to establishing reasonableness and necessity, the plaintiff must also prove "that she suffers from a disability, that she requested an accommodation . . . , that the defendant housing provider refused to make the accommodation . . . and that the defendant knew or should have known of the disability at the time of the refusal." *Hollis*, 2014 WL 3715088 at *8.

Beasley argues that her request for permission to use medical marijuana in her apartment is reasonable under the FHA because it poses no undue burden on Plaintiff. Beasley also argues that her request does not require a fundamental alteration to Plaintiff's existing policies, practices, or procedures.

Plaintiff maintains that Beasley's request is unreasonable because it would amount to a fundamental alteration in the nature of its operations. In support of its position, Plaintiff has submitted a HUD memorandum that was drafted by HUD's general counsel. Plaintiff argues that this Court must give the HUD memorandum substantial deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

### i.    Is HUD's Memorandum Entitled To Deference under *Chevron* or *Skidmore*?

Congress explicitly delegated authority and responsibility for administering the Fair Housing Act to the Secretary of Housing and Urban Development ("HUD"). 42 U.S.C. § 3608 (a). Plaintiff submitted a January 20, 2011 Memorandum Opinion issued by HUD to the Office of Fair Housing and Equal Opportunity ("FHEO") regarding medical use of marijuana and reasonable accommodation in federal public and assisted housing. (HUD Memo, attached to Pl. Br. at Ex. F). In that memorandum, HUD opines that

18

> PHAs and owners may not permit the use of medical marijuana as a reasonable accommodation because 1) persons who are currently using illegal drugs, including medical marijuana, are categorically disqualified from protection under the disability definition provisions of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act; and 2) such accommodations are not reasonable under the Fair Housing Act because they would constitute a fundamental alteration in the nature of a PHA or owner's operations . . . While PHAs and owners may not grant reasonable accommodations or medical marijuana use, they maintain the discretion to evict or refrain from evicting current residents who engage in such use, as set forth in [the Quality Housing and Work and Responsibility Act of 1998].

(HUD Memorandum, Pl. Ex. F, at p. 2).

Plaintiff argues that this Court should give *Chevron* deference to HUD's memorandum. Defendant responds that HUD memoranda are not entitled to *Chevron* deference because they "are not regulations or a product of congressional delegation of authority." (Def.'s Resp. at 5). However, Defendant acknowledges that this Court may nevertheless give HUD's memorandum "respect proportional to its 'power to persuade.'" (Def. Resp. at 5, citing *U.S. v. Mead Corp.*, 533 U.S. 218 (2001)).

In *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, the United States Supreme Court set forth the relevant framework for determining whether a court should afford deference to an agency's statutory interpretation:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842-43 (1984). "If the agency's interpretation is contained in a regulation or other

form intended to have the force of law, it is entitled to substantial deference under *Chevron*." *Navistar, Inc. v. Forester*, __ F.3d __, 2014 WL 4473331 at *5 (6th Cir. Sep. 12, 2014).  However, where "the agency's interpretation of the statute is contained in a more informal medium not intended to have the force of law . . . it is afforded a lesser level of deference known as *Skidmore* [*v. Swift & Co.*, 323 U.S. 134, 140 (1944)] deference."  *Id.* at *6.

Under *Skidmore*, the Court should give weight to an agency's interpretation of a statute "in proportion to its power to persuade." *Id.*  Factors to be considered include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Id. (quoting *Skidmore*, 323 U.S. at 140).  In considering the persuasiveness of the agency's proclamation, "the court must look to the statute's text and design, and determine whether the agency's interpretation is consistent with the congressional purpose."  *Id.* (citing *S. Rehab Grp., PLLC v. Sec'y of Health and Human Servs.*, 732 F.3d 670, 685 (6th Cir. 2013)).

Congress has not addressed the exact issue in this case.  However, because the HUD memorandum is not a statute, regulation, or formal judicial interpretation, the Court finds that it does not have the force of law.  Accordingly, *Chevron* deference is inapplicable.  The issue then becomes whether the HUD memorandum is persuasive, and therefore worthy of *Skidmore* deference.

The Court shall, per *Skidmore*, give weight to HUD's conclusion that a medical marijuana accommodation is not reasonable under the Fair Housing Act because it would constitute a fundamental alteration in the nature of a PHA or owner's operations.  HUD General Counsel's memorandum thoroughly discusses the legal implications of state-sanctioned medical marijuana use under the FHA, the ADA, and section 504 of the Rehabilitation Act.  The HUD memorandum

20

contains citations to both statutes and case law, and the writer's reasoning is logically and legally sound. Even though the HUD memorandum does not have the force of law, HUD does have congressionally delegated authority to issue regulations implementing and interpreting the FHA. 42 U.S.C. § 3608 (a). Based on the foregoing, the Court shall give weight to HUD's opinion regarding medical marijuana and the FHA.

> **ii.   Would Requiring Reasonable Accommodation of Medical Marijuana Use In Federally Assisted Housing Fundamentally Alter The Nature Of The Program?**

Plaintiff manages Plymouth Square Village, a project-based Section 8 federally subsidized housing community, where Beasley currently rents a townhome. *See* 42 U.S.C. § 1437f (statute establishing Section 8 voucher regime). "The purpose of the Section 8 program is to provide low-income families with decent, safe and sanitary rental housing through the use of a system of housing assistance payments." 24 C.F.R. § 880.101. Congress has further clarified that "the Federal Government has a duty to provide public and other federally assisted low-income housing that is decent, safe, and <u>free from illegal drugs</u> . . . ." 42 U.S.C. § 11901(1) (emphasis added).

In furtherance of this policy statement, Congress mandates that the owner of federally assisted housing must prohibit admission of a household if it is determined that any household member is currently engaging in illegal use of a drug. 24 C.F.R. § 5.854(b)(1). A household must also be denied admission to federally assisted housing if the owner has reasonable cause to believe that a household's illegal use of drugs "may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 C.F.R. § 5.854(b)(2).

Under federal law, marijuana is a Schedule I controlled substance with "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1). As previously

discussed in section I, the federal Controlled Substances Act impliedly preempts the MMMA. Accordingly, to require Plaintiff to grant Defendant a reasonable accommodation to use marijuana would be to require Plaintiff to violate federal law. Such a requirement would fundamentally alter the nature of Plaintiff's operation by thwarting Congress's mission to provide drug-free federally assisted housing.

Considering Congress's clear policy initiative behind its Section 8 federally assisted housing program, and giving due *Skidmore* deference to HUD's interpretation of the FHA, the Court shall GRANT IN PART Plaintiff's Motion for Summary Judgment because the Court finds that Defendant is not entitled to a reasonable accommodation for medical marijuana use under the FHA.

### 2.     Section 504 of the Rehabilitation Act of 1973[5]

Initially, the Court notes that Plaintiff, in its First Amended Complaint, does not request a declaration regarding whether Defendant is entitled to a reasonable accommodation under section 504 of the Rehabilitation Act. (Doc. #16 at 10-11). Nor has Defendant requested accommodation under the Rehabilitation Act in her Answer. (Doc. #13). Therefore, it is unclear whether this issue is properly before the Court for consideration.

Nevertheless, Plaintiff raised the issue in its Motion and the Court shall address it for that reason. Plaintiff argues that Defendant is not entitled to a reasonable accommodation under section 504 of the Rehabilitation Act because "illegal drug users are prohibited from the definition" of a disabled individual. (Pl. Br. at 9).

Beasley appears to agree with Forest City that she is not entitled, as a reasonable accommodation under the Rehabilitation Act, to use medical marijuana in her apartment. (*See*

---

[5] 29 U.S.C. § 701 *et seq.*

Def.'s Br. at v, wherein Defendant responds "no" to the stated issue "Is Defendant entitled to a reasonable accommodation under the Rehabilitation Act to use medical marihuana?").

Furthermore, Plaintiff's analysis is correct.  Under the Rehabilitation Act of 1973, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity received Federal financial assistance . . . ."  29 U.S.C. § 794(a).  It appears undisputed that Plaintiff is a recipient of federal funds and, thus, subject to the Rehabilitation Act's requirements.  *See* also *Cason v. Rochester Housing Authority*, 748 F. Supp. 1002, 1007 (W.D.N.Y. 1990) (holding that housing authority who received financial assistance from HUD must comply with all federal anti-discrimination statutes applicable to the handicapped.).

For purposes of the Rehabilitation Act, "the term 'disability' means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ."  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)(A).  However, "for purposes of [section 794], the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use."  29 U.S.C. § 705(20)(C)(i).

Therefore, the Court finds, and Defendant appears to agree, that Defendant is not a qualified individual with a disability under section 504 of the Rehabilitation Act because she uses an illegal drug (according to federal law) and Plaintiff is, or is attempting to, discriminate against her on the basis of such drug use.

Therefore, the Court finds that Defendant is not entitled to a reasonable accommodation to

use medical marijuana under section 504 of the Rehabilitation Act.

**C.     May Plaintiff Evict Defendant For Her Use Of Medical Marijuana?**

Plaintiff, in its First Amended Complaint, requests that this Court declare that "the use, possession, manufacture, sale or distribution of marijuana in violation of the Controlled Substances Act is cause for Plaintiff to evict the tenants in violation thereof and such conduct is not exempted by the Michigan Medical Marijuana Act."  (First Amd. Compl. at 10-11).

The Court shall decline to issue such a declaration.  To do so would, in this Court's view, go beyond what is necessary to resolve the core dispute in this case—the core dispute being whether the Fair Housing Act requires Plaintiff to reasonably accommodate Defendant's use of state-sanctioned medical marijuana.  The state courts have jurisdiction to determine whether, and under what circumstances, a landlord may evict a tenant for violation of lease provisions.  This Court finds it prudent to leave eviction determinations to the sound discretion of those state courts.  *See Roumph*, 211 F.3d at 968 (court can decline to exercise jurisdiction in declaratory action when it would improperly encroach on state court jurisdiction).  Therefore, the Court shall decline to exercise its jurisdiction over this portion of Plaintiff's First Amended Complaint and DISMISS Plaintiff's First Amended Complaint to the extent that it seeks a declaration regarding its ability to evict Defendant.

**D.     Should The Court Permanently Enjoin Defendant From Smoking Marijuana On Plaintiff's Premises?**

Plaintiff requests that this Court issue a permanent injunction enjoining Defendant from using marijuana on its property.  To establish its entitlement to a permanent injunction, Plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

24

public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff asserts, in a conclusory fashion, that all four factors are met. (Pl. Br. at 14-15).

The Court finds that Plaintiff has failed to establish all four elements necessary for the Court to issue a permanent injunction in this case. Therefore, the Court shall DENY Plaintiff's Motion for Summary Judgment to the extent that Plaintiff seeks a permanent injunction prohibiting Defendant from smoking marijuana on its premises.

## CONCLUSION

Based on the foregoing, the Court shall:

1)      DENY Defendant's Motion To Dismiss (Doc. #30),

2)      GRANT IN PART Plaintiff's Motion for Summary Judgment (Doc. #19), to the extent that the Court hereby DECLARES that

         A)      The Controlled Substances Act, 21 U.S.C. § 801 *et seq*, preempts the Michigan Medical Marihuana Act, M.C.L. § 333.26421 *et seq*, and

         B)      The Fair Housing Act does not require Plaintiff to grant Defendant a reasonable accommodation to use medical marijuana in its federally-assisted housing complexes;

3)      DENY Plaintiff's Motion for Summary Judgment in all other respects; and

4)      DECLINE TO EXERCISE JURISDICTION and DISMISS Plaintiff's First Amended Complaint to the extent that Plaintiff seeks a declaration "[t]hat the use, possession, manufacture, sale or distribution of marihuana in violation of the controlled Substances Act is cause for Plaintiff to evict the tenants in violation thereof." (First Amd. Compl. at p. 11 ¶ C).

**IT IS SO ORDERED.**

                           S/Sean F. Cox
                           Sean F. Cox
                           United States District Judge

Dated: December 3, 2014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Forest City Residential Management, Inc.,
on behalf of Plymouth Square Ltd. Dividend
Housing Association and Monroe Township
Assoc. Ltd. Dividend Housing Association,

      Plaintiff,

v.                                        Case No. 13-14547

Lashawn Beasley and Eugene Kenyon,         Honorable Sean F. Cox

      Defendants.
_____/

PROOF OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 3, 2014, by electronic and/or ordinary mail.

                                  S/Jennifer McCoy_____
                                  Case Manager